UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

| | |
|---|---|
| ERIC E.,<br><br>                Plaintiff,<br><br>    v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 3:22-cv-5611-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

…

    Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3.

    Plaintiff applied for Title II disability insurance benefits on September 9, 2017 and alleged an onset date of September 22, 2012. AR 284. The claim was denied on January 31, 2018 and reconsideration was denied March 29, 2018. AR 267, 271. The ALJ conducted a hearing on November 2, 2021 concerning plaintiff's appeal. AR 157-202.

    Plaintiff challenges the ALJ's January 4, 2022 decision finding that plaintiff was not disabled. Dkt. 1-1, Complaint; AR 12-29. The ALJ found that plaintiff's severe

impairments were cervical spine degenerative disc disease, and degenerative joint disease. AR 18. The ALJ determined plaintiff had the residual functional capacity to perform "[l]ight work as defined in 20 CFR 404.1567(b) except occasional climbing of ladders, ropes or scaffolds; occasional crawling; occasional exposure to vibration; occasional exposure to extreme cold temperatures; and occasional overhead reaching bilaterally." AR 21. The ALJ determined that plaintiff could perform former work, at step four of the 5-step review – the job of "chief guard" at the light exertional level, "as generally performed". AR 28. The ALJ therefore found that plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31. 2017, the date last insured". AR 28-29.

## DISCUSSION

Plaintiff argues that the ALJ erred at step four of the five-step review process – the review and description of plaintiff's past work, when plaintiff worked with Homeland Security, and served as a Transportation Safety Administration (TSA) supervisor. Dkt. 13, opening brief, at 1, 3-8; *see* AR 163-166 (plaintiff's testimony regarding his duties and on-the-job tasks).

Plaintiff also argues the ALJ erred in making a determination of plaintiff's residual functional capacity (RFC). Dkt. 13, opening brief, at 1, 8-17. Plaintiff contends the ALJ erred in evaluating the medical opinions of Dr. Gaffield, and Dr. Coor. *Id.*

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**1. Whether the ALJ erred in evaluating the medical evidence.**

Plaintiff asserts the ALJ's determination that Dr. Gary Gaffield's opinion was unpersuasive was error; the ALJ found that Dr. Gaffield's opinion was not persuasive because it was unexplained, and inconsistent with medical evidence in the record. Dkt. 13, opening brief, at 15.

Plaintiff asserts the ALJ's determination that Dr. Samuel Coor's opinion was unpersuasive was error; the ALJ rejected Dr. Coor's opinion because it was inconsistent with a normal physical examination. Dkt. 13, opening brief, at 16-17.

Plaintiff filed their application after March 27, 2017. For applications filed after March 27, 2017, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 416.920c(b)(2). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(1), (c)(2). Under the new

3

regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2). *Id.*

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The record shows Dr. Gaffield examined plaintiff on January 11, 2018. AR 864-870. The diagnosis was, "complex regional pain syndrome, by report, with no areas of

4

involvement noted in either lower extremity. Fingers and shafts of fingers – numb. [I]mpairs his dexterity bilaterally, not related to dermatomes. Limited motion of both shoulders, without weakness, more on the left than on the right. Knee problems, by report. No weakness or effusion noted. Chest problems, by report. No gross deformities noted. . ..” AR 869.

Dr. Gaffield made the following functional assessment:

- Plaintiff had the ability to walk or stand in an 8-hour workday with adequate breaks and rest periods.
- Plaintiff had the ability to sit in an 8-hour workday with adequate breaks and rest periods.
- "He should continue to use his cane in his right hand as a third leg to protect him and compensate for balance issues."
- "Maximum lifting and carrying capacity: Not more than 20 pounds occasionally and 10 pounds frequently, due to the weakness of his shoulders."
- "Postural activities: Can be performed occasionally, limited by his restricted lumbar motion and shoulder issues."
- "Manipulative activities: Could be performed occasionally, limited by the loss of dexterity of his fingertips. He could easily do gross movements, reaching, pushing."
- "Workplace environment: He should avoid heights, working on scaffolding, climbing stairs and ladders, due to the weakness in his shoulders and limited motion of the left hip."

AR 869-870.

The ALJ's decision offers conclusions, but without any consideration or analysis. AR 24. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). This is error, and it is harmful because if Dr. Gaffield's assessment had been properly considered, there may have been a different RFC with additional limitations. *Id.*

Dr. Coor evaluated plaintiff on May 1, 2013. AR 1024. Dr. Coor noted the following Impressions:

"[Plaintiff] has a normal examination. Neck – most likely combination of degenerative joint disease, myofascial pain. No evidence of radiculopathy. Anxiety – most likely his main problem. Reflex sympathetic dystrophy – I am not finding any clinical or historical evidence of reflex sympathetic dystrophy, regional pain syndrome or causalgia. His description of RSD is not consistent with a clinical diagnosis of RSD. Chest wall – no evidence of deformity, muscle wasting or weakness, most likely myofascial. Neurological damage – his neurological evaluation is non focal and am not finding any evidence clinically of underlying neurological damage." AR 1027.

Dr. Coor opined: that plaintiff's "examination does not demonstrate significant findings associated with the reasons for the examination. He does not demonstrate clinical evidence of RSD, neurological damage and the reason for using a cane is not clear since his gait is steady and he has no evidence of disequilibrium or cerebellar findings.

He does have problems with his neck and back however there does seem to be a combination of medically reinforced impairment to explain his symptom complex without the associated underlying somatoform anxiety disorder evaluation and treatment component. Given his current complex I would think that a low level part time

employment where there is no lifting, bending, stooping, rotating, standing or walking for any prolonged period, greater than 5-10 minutes at a time may be well tolerated. I would recommend a more thorough neuropsychological evaluation to determine what his functional capabilities are and then proceed from there. I suspect given all of the information that significant recovery will not occur in the current context of his diagnosis and treatment." AR 1028

The ALJ commented on "normal findings" and found that Dr. Gaffield's assessment was not adequately supported or explained, yet the ALJ's decision did not mention the volume of medical records over multiple years – supporting both Dr. Gaffield's and Dr. Coor's opinions – that plaintiff had symptoms that would cause limitations in his balance, strength, and mobility. AR 25-26. For example, the record shows plaintiff was evaluated in 2012 (AR 844, 1069-1076) and was found by the Veteran's Administration in 2012-2015 to be 90% disabled. AR 1104-1115. Other evaluations in 2013, 2014, 2015, and 2021, also confirm that plaintiff showed impaired balance, was diagnosed with chronic pain syndrome, significant neurological damage, spasms, numbness, and shooting pains. AR 812-827 (medical assessments from 2015 and 2016); 831-836 (medical assessments from 2014); 1055-1056 (2013 medical assessment by Dr. Billings, noting that plaintiff was using a cane, and documenting "contributing factors of pain, weakness, fatigability and/or incoordination.. additional limitation of functional ability of the thoracolumbar spine during flare-ups or repeated use over time."); 1186-1187, 1249, 1354-1355 (medical records from 2019 and 2021, documenting ongoing chronic musculoskeletal pain); 1355-56 (medical statement dated 9-21-2021 that plaintiff has suffered from chronic pain syndrome, complex regional pain

syndrome, major depression, left shoulder impingement, arthralgias of the left shoulder, chronic anxiety disorder, and significant neurological damage, that also causes recurrent vertigo, and also memory loss).

As noted by plaintiff, the ALJ relied on the same citations to the record, and did not provide a bridge of reasoning, when the ALJ rejected both Dr. Gaffield's and Dr. Coor's opinions. *Id.* A conclusory reason, without explanation, is an insufficient basis for rejecting a medical opinion under the 2017 regulations. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). This was error, because the ALJ is required to provide more analysis than simply a conclusion. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014). The error was harmful because if these medical opinions had been properly assessed, the RFC determination may have included more restrictive limitations, thereby potentially affecting the disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1502, 1054 (9th Cir. 2006)*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

**2. Whether the ALJ erred in characterizing plaintiff's past work at step four.**

At step four in the evaluation process, the claimant has the burden to prove they are not able to perform prior relevant work; and the ALJ must make factual findings to support their conclusion by looking at the RFC and the demands of the claimant's past work to decide whether a claimant's impairment(s) prevents the claimant from doing past relevant work. *Carmickle v. Commissioner, Social Sec. Admin.,* 533 F.3d 1155,

1166 (9th Cir. 2008); *Pinto v. Massanari,* 249 F.3d 840, 844-845 (9th Cir. 2001); see 20 C.F.R. § 404.1520(f).

Under SSR 82-61 there are two tests for determining whether a claimant retains the capacity to perform past relevant work. First: whether claimant retains the capacity to perform the functional demands and job duties peculiar to an individual job as they actually performed it. Second: whether claimant retains the capacity to perform the functional demands and job duties as ordinarily required by employers throughout the national economy. SSR 82-61.

The SSR also states that "it is understood that some individual jobs may require somewhat more or less exertion than the DOT description." *Id.* at *4. When the claimant cannot perform the excessive functional demands that are required in the past relevant work, but can perform the functional demands as generally required by employers in the national economy, the ALJ should find the claimant to be "not disabled." *Id*.

The ALJ may use either the "actually performed" test or the "generally performed" test to determine whether a claimant can perform his past relevant work. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (citing SSR 82-61). Under the "actually performed" test, the ALJ evaluates a claimant's past relevant work by consulting a "properly completed vocational report" and "the claimant's own testimony" and assessing whether the claimant can perform her past job duties as she actually performed them. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). By contrast, under the "generally performed" test, the ALJ consults the Dictionary of Occupational Titles ("DOT") to determine whether the claimant can perform her past

9

1    work as it is generally performed in the national economy. *Stacy*, *supra,* 825 F.3d at 569

2    (citing SSR 82-61). The ALJ errs when they classify past work according to "the least

3    demanding aspect" of the claimant's former employment. *Id.* at 569.

4         Starting in January 2003, plaintiff worked for Homeland Security, as a supervisor;

5    he supervised all the Transportation Safety Administration (TSA) activities at the airport.

6    Plaintiff explains, "I actually brought all the airports online and then worked at SeaTac. I

7    did a lot of the training for the roll out for TSA." AR 163. Plaintiff also stated, "I was in

8    charge of the security check point." AR 164.

9         The Vocational Expert observed, "[y]our Honor, I have trouble finding a good

10   match. But I do have chief guard and the reason why I am using that occupational title,

11   it has multiple alternate titles and it includes supervising guards in a variety of

12   situations." AR 165. The VE also stated, "[t]hat has a DOT code of 372.167-014, that is

13   classified as light level of exertion with an SVP of 6, which is skilled work." AR 166. The

14   ALJ determined that plaintiff could perform the job of "chief guard" at the light exertional

15   level, and this was "as generally performed". AR 28.

16        Plaintiff stated that he was injured while working at SeaTac Airport: "I was

17   actually very heavy lifting and they had to get water. . . when I lifted the water bottle up

18   onto the water cooler. It didn't sit on the neck properly and when I went to lift it back up I

19   heard a bunch of tearing on my left side and dropped the bottle and I already had

20   previous cervical disc disease from breaking my back and neck in the military. And that

21   on top of everything else just wiped me the rest of the way out." AR 166. September 10,

22   2012 is the date of onset – the date plaintiff was medically retired, based on this injury.

23   *Id.*

24

25

The ALJ did not make detailed findings; instead the ALJ issued a conclusory decision based on the Vocational Expert's testimony that was less than clear, and did not identify or explain the factual data relied on, and failed to provide reasons why the DOT job identified by the ALJ as "chief guard" would be light work, given that plaintiff testified he was not purely a supervisor – and that he was injured while doing heavy lifting as part of that job.

## CONCLUSION

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as ambiguity in the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing concerning whether plaintiff was under a disability from the alleged date of onset (9-22-2012) through the date last insured (12-31-2017). This case is being remanded for a de novo hearing due to error with the evaluation of medical evidence; on remand, the Commissioner is directed to re-evaluate the medical evidence and review the opinions of Dr. Gaffield and Dr. Coor, offer plaintiff the opportunity to present additional evidence in a de novo hearing, and explain how the factors of supportability and consistency were considered.

On remand the Commissioner is also directed to review the plaintiff's occupational history, and take additional testimony from plaintiff and additional evidence to make appropriate findings and determine whether the position plaintiff occupied with the Transportation Safety Administration consisted of on-the-job heavy work, as well as supervisory responsibility. *See, Carmickle,* 533 F.3d at 1166; *Pinto v. Massanari*, 249 F.3d at 845. The Commissioner is directed to consider whether this would more accurately be characterized as a composite job under POMS DI 25005.020 -- if the

claimant's past work qualifies as a composite job, then the ALJ would be required to analyze the specific facts and determine whether claimant would be able to fulfill the duties of previous employment as actually performed.

The Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 25th day of May, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge